UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x

LUCERO SANTANA,

       Plaintiff,

   -v-                                 No.  15CV4934-LTS

LATINO EXPRESS RESTAURANTS, INC.
and TOMMY PIMENTAL,

       Defendants.

--------------------------------------------------------x

<u>MEMORANDUM OPINION AND ORDER</u>

       Plaintiff Lucero Santana ("Santana" or "Plaintiff") brings this action against Latino Express Restaurants, Inc. ("the Restaurant") and Tommy Pimental ("Pimental" and, collectively, "Defendants"), asserting claims of failure to pay minimum and overtime wages pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201, <u>et</u> <u>seq.</u> ("FLSA") and New York State Labor Law ("NYLL"), Articles 6 and 19.  Plaintiff also asserts claims of failure to provide written notice of wage rates pursuant to the Wage Theft Prevention Act, New York Labor Law § 195, <u>et</u> <u>seq.</u> ("WTPA") and for discrimination and retaliation pursuant to the New York City Human Rights Law, New York City Administrative Code § 8-107, <u>et</u> <u>seq.</u> ("NYCHRL").  Plaintiff seeks to recover unpaid back wages, liquidated damages, prejudgment interest, WTPA damages, emotional distress damages, punitive damages, and reasonable attorneys' fees and costs.  Now before the Court is Plaintiff's motion for default judgment against Defendants made pursuant to Federal Rule of Civil Procedure 55(b)(2).  (<u>See</u> Docket Entry No. 17.)  The Court has jurisdiction of the action pursuant to 28 U.S.C. §§ 1331 and 1367.

The Court has reviewed Plaintiff's unopposed submissions, which include a memorandum of law and documentary evidence, thoroughly.  For the reasons stated below, the Court grants Plaintiff's motion for default judgment with respect to liability on all of her claims, and awards the damages claimed by Plaintiff that are attributable to Defendants' wage and hour violations.  The Court refers this matter to Magistrate Judge Debra C. Freeman for an inquest into damages attributable to her claims under the NYCHRL.

BACKGROUND[1]

On or about April 3, 2015, Plaintiff Santana began working for Defendants as a server at the Latino Express Restaurant, located in the Bronx, New York.  (Compl. ¶¶ 9, 17.)  Pimental was the co-owner and manager of the Restaurant, and was Santana's supervisor.  (Id. ¶¶ 12-13.)  The Restaurant had the power to determine Santana's wages, schedule, rate of pay, and other terms and conditions of her employment.  (Id. ¶¶ 10-11.)  Accordingly, Pimental had the power to hire and fire Santana, to affect the terms and conditions of her employment, and to manage her daily work activities.  (Id. ¶ 13.)  The Restaurant grossed more than $500,000 per year in revenue and, throughout the course of Santana's employment, she routinely engaged in activities that facilitated or were related to interstate or foreign commerce.  (Id. ¶ 16.)

Santana worked at the Restaurant from on or about April 3, 2015, to on or about May 10, 2015.  (Id. ¶¶ 17, 47.)  From approximately April 3, 2015, to April 26, 2015, Santana

---

[1]     The facts recited herein are drawn from Plaintiff's Complaint ("Compl.") in this action.  In light of Defendants' failure to respond to the Complaint, Plaintiff's well-pleaded factual allegations are accepted as true for purposes of this motion practice.  See Fed. R. Civ. P. 8(b)(6); Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992) ("[A] party's default is deemed to constitute a concession of all well pleaded allegations of liability.").  Plaintiff has supplemented the Complaint with her declaration as to the material facts.

worked from 4:00 p.m. to 2:00 a.m. seven days per week, for a total of 120 non-overtime hours and 90 overtime hours.  (Compl. ¶ 22.)  From approximately April 26, 2015, to May 10, 2015, she worked from 4:00 p.m. to 2:00 a.m. five days per week, for a total of 80 non-overtime hours and 20 overtime hours.  (Id. ¶ 24.)  Defendants failed to pay Santana wages for any of the hours that she worked.  (Id. ¶¶ 23, 25.)  The only payment she received was a portion of the weekly tip pool that she shared with the other servers.  (Id. ¶ 23.)  At no point during her employment, however, did the Restaurant provide her with notice that it would apply a tip credit or allowance towards the payment of a minimum wage salary.  (Id. ¶ 19.)  The Restaurant also failed to provide her with: notice of her regular and overtime rates of pay; the method by which she would be paid; her regular payday; or the official name of her employer.  (Id. ¶ 20.)  Although the Restaurant maintained schedules that listed the times particular employees were required to work, it maintained no system of recording the hours that employees actually worked.  (Id. ¶ 21.)

Approximately one or two weeks after Santana started working at the Restaurant, Pimental began criticizing Santana's appearance and clothing on a regular basis.  (Id. ¶¶ 32-33.)  Although the Restaurant had no dress policy and Santana dressed similarly to her co-workers, Pimental repeatedly told her to dress "sexier" and to wear tighter clothes.  (Id. ¶¶ 33-34.)  Pimental made derisive remarks like "is that your mom's shirt?" or "are those your mom's pants?" on a near-daily basis, and he regularly told Santana that she looked like she was "coming from church."  (Id. ¶¶ 34-35.)  Pimental also offered to buy Santana "tighter jeans" and a belt to make her jeans "fit tighter."  (Id. ¶ 34.)

In or around the week of April 19, 2015, Pimental asked Santana if she "brought an application" to apply to be his "girlfriend."  (Id. ¶ 36.)  He repeatedly told her that he could do things for her that younger men could not because he was "older."  (Id. ¶ 38.)  On one occasion,

Pimental stated that he "like[s] younger girls" and that he used to have a fifteen-year-old girlfriend. (Compl. ¶ 40.) He also repeatedly asked her if she had a boyfriend, even though Santana responded each time that she was not interested in dating him. (Id. ¶ 39-40.)

In or around the end of April 2015, Santana complained to the Restaurant's other co-owner, who was Pimental's wife, about Pimental's treatment of Santana. (Id. ¶ 41.) Almost immediately thereafter, Pimental began singling Santana out and reprimanding her for things he had not taken issue with previously. (Id. ¶¶ 42-43.) He glared at her during work, and on one occasion screamed at her in front of others, even though he had never yelled at a server before. (Id. ¶¶ 45-46.) Pimental also started assigning Santana a disproportionate number of less desirable tasks like cleaning the back areas and bathrooms of the Restaurant; such tasks had been assigned equitably prior to Santana's complaint. (Id. ¶ 44.) Santana quit on or about May 10, 2015. (Id. ¶ 47.) Santana claims to feel humiliated, degraded, victimized, embarrassed, and emotionally distressed as a result of Pimental's actions. (Id.)

Santana filed the instant action on June 24, 2015, asserting nine Causes of Action against Defendants for violations of the FLSA, NYLL, WTPA, and NYCHRL. (See generally id. ¶¶ 17-94.) Santana served the Restaurant with the Summons and Complaint on July 21, 2015, and served Pimental with the Summons and Complaint on July 23, 2015. (See Docket Entry Nos. 6, 8.) Both Defendants have since failed to make any formal appearance in this action or file any responsive pleadings. (See Docket Entry No. 12.) On September 21, 2015, this Court granted Santana permission to move for default judgment. (Id.) The Clerk of Court issued a Certificate of Default against Defendants on October 6, 2015 (Docket Entry No. 15), and Santana thereafter filed the instant motion. (Docket Entry No. 17.) Santana's motion is accompanied by evidentiary proffers and exhibits supporting her claims, as well as a

memorandum of law.  (Docket Entry Nos. 18, 19.)

      An initial pretrial conference was held on February 19, 2016, at which Defendant Pimental appeared pro se.  The Court directed Pimental to enter a Notice of Appearance either by counsel or pro se by April 22, 2016, and notified Pimental that the Restaurant would have to appear by counsel no later than April 22, 2016.  (See February 19, 2016, Minute Entry.)  The Court also warned Pimental that if appearances were not entered by that date, the Court would take Plaintiff's motion for default judgment on submission.  (See id.)  The Court thereafter filed an order summarizing those instructions.  (See Docket Entry No. 23.)  The deadline for appearances passed and, on May 12, 2016, the Court entered an order indicating that it would decide the default motion on submission.  (See Docket Entry No. 24.)

DISCUSSION

      When determining whether to grant a motion for default judgment, courts in this district consider three factors: "(1) whether the defendant's default was willful; (2) whether defendant has a meritorious defense to plaintiff's claims; and (3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment." Mason Tenders Dist. Council v. Duce Const. Corp., No. 02CV9044-LTS-GWG, 2003 WL 1960584, at *2 (S.D.N.Y. Apr. 25, 2003); see also Guggenheim Capital, LLC v. Birnbaum, 722 F.3d 444, 455 (2d Cir. 2013) (applying these factors in review of a lower court's grant of default judgment).  Here, the Court finds that all three factors weigh in Plaintiff's favor.[2]  Once the court

---

[2]    Defendants' non-appearance and failure to respond to Plaintiff's Complaint or Motion to For Default Judgment indicates willful conduct.  See Indymac Bank, F.S.B. v. National Settlement Agency, Inc., No. 07CV6865-LTS-GWG, 2007 WL 4468652, at *1 (S.D.N.Y. Dec. 20, 2007) (holding that non-appearance and failure to respond to a complaint or motion for default judgment indicates willful

determines that these factors favor the plaintiff, it must decide whether the plaintiff has pleaded facts supported by evidence sufficient to establish the defendant's liability with respect to each cause of action asserted.  See Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981); see also Gunawan v. Sake Sushi Restaurant, 897 F. Supp. 2d 76, 83 (E.D.N.Y. 2012) ("[A] defendant's default does no more than concede the complaint's factual allegations." (citations omitted)).

        If the facts and evidence presented are sufficient to establish liability, the court must go on to "determine the appropriate amount of damages, which involves two tasks: determining the proper rule for calculating damages on such a claim, and assessing plaintiff's evidence supporting the damages to be determined under this rule."  Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999); see also Greyhound Exhibitgroup, Inc., 973 F.2d at 158 ("While a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages.").  Although the court is not "obligated to hold an evidentiary hearing" to determine damages, it must "take the necessary steps to establish damages with reasonable certainty."  See Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc., 109 F.3d 105, 111 (2d Cir. 1997); see, e.g., Fustok v. ContiCommodity Services, Inc., 873 F.2d 38, 40 (2d Cir. 1989) (holding that detailed affidavits, documentary evidence, and district judge's personal knowledge of the record provided sufficient basis for calculating damages).

---

conduct).  With respect to the second factor, the Court is unable to determine whether Defendants would be able to present any meritorious defense to Plaintiff's claims because Defendants have failed to appear.  Finally, the Court finds that Plaintiff will be prejudiced if, in light of Defendants' default, she is unable to vindicate her rights and receive appropriate compensation for her hours worked.

<u>Violations of the Fair Labor Standards Act and New York Labor Law</u>

       *Liability*

       The FLSA minimum wage and overtime provisions apply to employees who are "(1) personally engaged in interstate commerce or in the production of goods for interstate commerce . . . or (2) [were] employed in an enterprise engaged in interstate commerce or in the production of goods for interstate commerce."  <u>Rodriguez v. Almighty Cleaning, Inc.</u>, 784 F. Supp. 2d 114, 120 (E.D.N.Y. 2011) (alteration in original) (citation omitted); <u>see also</u> 29 U.S.C. §§ 206(a), 207(a).  Plaintiff's Complaint alleges that the Restaurant's gross revenues exceeded the requisite statutory amount and Santana regularly engaged in activities that facilitated interstate commerce while working at the Restaurant, and thus is a covered employee under the FLSA.  (<u>See</u> Compl. ¶¶ 16-17.)  Moreover, to be held liable under the FLSA, a defendant must be an "employer," which is defined as "any person acting directly or indirectly in the interest of an employer in relation to an employee."  29 U.S.C.S. § 203(d) (LexisNexis 2013); <u>Herman v. RSR Sec. Services Ltd.</u>, 172 F.3d 132, 139 (2d Cir. 1999).  It is uncontested that Latino Express employed Plaintiff, and had the power to determine her wages.  (<u>See</u> Compl. ¶ 10.)  Because Pimental had the power to hire and fire Santana, affect her terms and conditions of employment, and manage her work activities, he is also an employer of Santana under the FLSA.  (<u>Id.</u> ¶¶ 10-11, 13.)  <u>See</u> <u>Herman</u>, 172 F.3d at 139 (holding that supervisory authority, determining schedule, rate of pay and terms of employment are sufficient indicia of employer status).

       Under the FLSA, an employee bears the burden of proving that she was not properly compensated for her work.  <u>See</u> <u>Anderson v. Mt. Clemens Pottery Co.</u>, 328 U.S. 680, 687 (1946) (superseded on other grounds).  The employee can do so by obtaining and producing her employer's records.  <u>See</u> <u>id.</u>  However, when "the employer's records are inaccurate or

inadequate" and "the employee cannot offer convincing substitutes," the employee can meet her burden of proof if she "produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference."  Id.  "The burden then shifts to the employer to come forward with evidence of the precise amount of work performed . . . ."  Id.  If the employer fails to do so, "the court may then award damages to the employee, even though the result be only approximate."  Id. at 688; see also Liu v. Jen Chu Fashion Corp., No. 00CV4221-RJH-AJP, 2004 WL 33412, at *3 (S.D.N.Y. Jan. 7, 2004) ("[I]n the absence of rebuttal by defendants, plaintiffs' recollection and estimates of hours worked are presumed to be correct.").  Under the NYLL, employers who fail to maintain appropriate records "bear the burden of proving that the complaining employee was paid."  N.Y. Lab. Law § 196-a.

            Here, the Restaurant did not maintain records of the hours its employees worked. (Compl. ¶ 21.)  However, because Plaintiff has provided unrebutted recollections and estimates of the hours she worked, and her allegation that she was never paid minimum hourly pay or overtime (id. ¶¶ 23, 25) is deemed admitted, she has satisfied her burden for establishing liability under the FLSA within the Anderson framework.  (See also Decl. of Lucero Santana ("Santana Decl.") Ex. A.)  Defendants have not satisfied their burden under the NYLL of demonstrating that Plaintiff was paid a minimum hourly wage or overtime.  Defendants' violations of the FLSA and the NYLL are thus established.  Moreover, Defendants' failure to provide Plaintiff with notice of her rates of pay, her regular payday, how she would be paid, or tip credits or allowances taken as part of the minimum wage violated the WTPA (id. ¶¶ 19-20), entitling Plaintiff to damages under that statute.  N.Y. Lab. Law § 195.

*Damages*

The Court finds that Plaintiff has proffered sufficient evidence to establish

damages with respect to Defendants' FLSA and NYLL violations "with reasonable certainty."

Transatlantic Marine Claims Agency, 109 F.3d at 111; see also Tamarin v. Adam Caterers, Inc.,

13 F.3d 51, 54 (2d Cir. 1993) (finding that the district court did not abuse its discretion by

determining damages with the aid of a single affidavit only partially based upon real numbers).

Plaintiff is entitled to unpaid minimum hourly and overtime wages for the five weeks she

worked at the Restaurant.  Under the FLSA, an employer cannot claim a tip credit on an

employee's wages unless the employer has notified the employee of the FLSA provisions

permitting the tip credit.  29 U.S.C. § 203(m); Inclan v. New York Hospitality Group, Inc., 95 F.

Supp. 3d 490, 497 (S.D.N.Y. 2015) (citations omitted).  If the employer cannot show that it

provided the employee with notice of the tip credit, the tip credit cannot be taken and the

employer is liable for the full minimum wage.  See id.  During Plaintiff's employment at the

Restaurant, the New York minimum wage rate was $8.75 per hour.  Plaintiff's overtime rate was

one and one-half times her normal wage rate of $8.75, or $13.125.  Over Plaintiff's period of

employment, Plaintiff worked a total of 200 regular non-overtime hours and 110 overtime hours.

Accordingly, Plaintiff is entitled to $3,193.75 in unpaid wages.[3]

Plaintiff also seeks to recover liquidated damages on this amount under both the

FLSA and NYLL.  The Second Circuit has not yet addressed "whether a plaintiff may recover

---

[3]   Plaintiff also requests lost back pay in the amount of $8,750 for the twenty-five weeks between Plaintiff's last day of employment at the Restaurant and the commencement of her present job.  (See Wolnowski Decl. ¶¶ 18-19.)  In light of the fact that Plaintiff has failed to proffer a legal basis in support of such an award, the request is denied insofar as it is premised on her FLSA, NYLL and WTPA claims.

cumulative . . . liquidated damages under the FLSA and NYLL, and the district courts in this Circuit are deeply divided."  Inclan, 95 F. Supp. 3d at 505.  "A majority of courts [in this Circuit] have held that plaintiffs may recover under both [the] FLSA and [the] NYLL, because the liquidated damages provisions serve fundamentally different purposes."  Yu Y. Ho v. Sim Enterprises, Inc., No. 11CV2855-PKC, 2014 WL 1998237, at *18 (S.D.N.Y. May 14, 2014) (citations omitted).  Other courts within the district have ruled that a plaintiff is not entitled to recover under both statutes because they "serve the same practical purposes in compensating the plaintiff and deterring wage violations" and compensate "the exact same harm."  See Li Ping Fu v. Pop Art Intern. Inc., No. 10CV8562-DLC-AJP, 2011 WL 4552436, at *5 (S.D.N.Y. Sept. 19, 2011) (citations omitted).

Recent amendments to the NYLL strengthen the position that double liquidated damages are not available because the two liquidated damages provisions serve the same purpose.  Prior to the amendments, the NYLL required proof of a willful violation to trigger liquidated damages; the provision was therefore construed as punitive in nature.  See Yu Y. Ho, 2014 WL 1998237, at *18.  However, a November 24, 2009, amendment changed the NYLL liquidated damages provision to resemble that of the FLSA, which requires only an absence of good faith on the part of the employer, shifting the burden to the employer to prove that he acted in good faith.  An April 9, 2011, amendment to the NYLL further aligned the NYLL with the FLSA by increasing the level of available liquidated damages from twenty five- to one hundred-percent of the total amount of wages due.  N.Y. Lab. Law § 198(1-a).

As a result of these amendments bringing the statutes into alignment, a trend of denying cumulative liquidated damages has emerged within this Circuit.  See Santana v. Brown, No. 14CV4279-LGS, 2015 WL 4865311, at *5 (S.D.N.Y. Aug. 12, 2015); see, e.g., Inclan, 95 F.

Supp. 3d at 506 ("Even assuming there were [sic] once a plausibly substantive distinction between liquidated damages under the FLSA and NYLL, the recent amendments to the NYLL have undermined the basis for such a distinction."); see also Garcia v. JonJon Deli Grocery Corp., No. 13CV8835-AT, 2015 WL 4940107, at *6 (S.D.N.Y. Aug. 11, 2015) ("As the standards for liquidated damages under both statutes have now coalesced, there is no longer a rationale for cumulative recovery.").  The Court finds the reasoning of these recent decisions persuasive and holds that Plaintiff is not entitled to double recovery for liquidated damages under both the FLSA and NYLL.  Thus, Plaintiff is awarded a total of $3,193.75 in liquidated damages in respect of Defendants' violations of the FLSA and NYLL.

There is also a split within the Second Circuit as to whether prejudgment interest should be awarded – in addition to liquidated damages – for unpaid wages owed under both the FLSA and NYLL.  Zhen Ming Chen v. New Fresco Tortillas Taco LLC, No. 15CV2158-RA-AJP, 2015 WL 5710320, at *9 (S.D.N.Y. Sept. 25, 2015) (citations omitted).  It has long been established that "prejudgment interest may not be awarded in addition to liquidated damages" for FLSA violations.  Brock v. Superior Care, Inc., 840 F.2d 1054, 1064 (2d Cir. 1988) (citing Brooklyn Savings Bank v. O'Neil, 324 U.S. 697, 714-16 (1945)).  However, the Second Circuit has stated that under the NYLL, both prejudgment interest and liquidated damages may be awarded because the two provisions serve fundamentally different purposes.  See Reilly v. Natwest Mkts. Grp. Inc., 181 F.3d 253, 265 (2d Cir. 1999) (citations omitted).  Nonetheless, the recent amendments to the NYLL undermine the distinction between liquidated damages and prejudgment interest, and some courts have accordingly refused to grant prejudgment interest for claims arising under both the FLSA and NYLL.  See, e.g., Zhen Ming Chen, 2015 WL 5710320, at *9 ("The same logic which prevents this Court from allowing cumulative liquidated damages

under both the NYLL and FLSA likewise prevents prejudgment interest on overlapping claims for which FLSA liquidated damages have been awarded.") (citations omitted).

Other courts within this Circuit that have denied cumulative liquidated damages have nonetheless awarded prejudgment interest in addition to liquidated damages under the NYLL. See, e.g., Castillo v. RV Transport, Inc., No. 15CV0527-LGS, 2016 WL 1417848, at *3 (S.D.N.Y. Apr. 11, 2016). The Court agrees that both liquidated damages and prejudgment interest are appropriate, as Plaintiff should be permitted to "recover under the statute that provides the greatest relief," which in this case is the NYLL. Id. (citation omitted); see also Jiao v. Shi Ya Chen, No. 03CV0165-DCF, 2007 WL 4944767, at *17 (S.D.N.Y. Mar. 30, 2007) ("Where a plaintiff is entitled to damages under both federal and state wage law, a plaintiff may recover under the statute which provides the greatest amount of damages."). The NYLL expressly provides for both liquidated damages and prejudgment interest. See N.Y. Lab. Law § 198(1-a) ("[T]he court shall allow such employee to recover . . . prejudgment interest . . . and, unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law, an additional amount as liquidated damages equal to one hundred percent of the total amount of the wages found to be due.").

The statutory annual rate of prejudgment interest is nine percent per annum (N.Y. C.P.L.R. § 5004), and interest can be awarded from a reasonable intermediate date during the course of the plaintiff's employment (see id. § 5001(b)). "A court has discretion to choose a reasonable accrual date." Gunawan, 897 F. Supp. 2d at 93 (citation omitted). The Court finds that the midpoint of Plaintiff's employment period from April 3, 2015, to May 10, 2015, was April 22, 2015. Accordingly, Plaintiff is awarded prejudgment interest at a nine percent annual interest rate on the principal amount of $3,193.75 for the period from April 22, 2015 through the

date judgment is entered.

Plaintiff is also entitled to damages stemming from Defendants' WTPA violations, calculated at the rate of "fifty dollars for each work day that the violations occurred or continue to occur, but not to exceed a total of five thousand dollars, together with costs and reasonable attorney's fees."  N.Y. Lab. Law § 198(1-b).  Plaintiff is awarded statutory damages of $50 per work day of her employment period of thirty-one days, for a total of $1,550.

NYCHRL Discrimination and Retaliation Claims

*Liability*

Plaintiff alleges that Defendants unlawfully discriminated against her on the basis of gender by sexually harassing her and maintaining discriminatory working conditions.  Under the NYCHRL, it is unlawful for an employer to discriminate against an individual "in compensation or in terms, conditions, or privileges of employment" because of the individual's gender.  McKinney's Executive Law § 296(1); Admin. Code § 8-107(1).  "Through developments in case law, the concept of sex-based discrimination in employment has come to include sexual harassment of employees."  Father Belle Cmty. Ctr. v. New York State Div. of Human Rights on Complaint of King, 642 N.Y.S.2d 739, 744 (App. Div. 4th Dep't 1996) (citations omitted).

In order to establish a prima facie case of sexual harassment, an employee must show that "(1) she belongs to a protected group, (2) she was the subject of unwelcome sexual harassment, (3) the harassment was based on her gender, (4) the sexual harassment affected a term, condition, or privilege of employment, and (5) the employer knew or should have known of the harassment and failed to take remedial action."  Pace v. Ogden Servs. Corp., 692 N.Y.S.2d

220, 223 (App. Div. 3rd Dep't 1999) (citations omitted).  The employer must then present "a legitimate, independent, and nondiscriminatory reason for its actions," after which the burden shifts back to the employee to prove that the employer's stated reasons were only a pretext for discrimination.  See Town of Lumberland v. New York State Div. of Human Rights, 644 N.Y.S.2d 864, 869 (App. Div. 3rd Dep't 1996).

       For an employer's conduct to be actionable as hostile work environment sexual harassment,[4] it "must be both objectively and subjectively offensive, such that a reasonable person would find the behavior hostile and abusive, and such that the plaintiff herself did, in fact, perceive it to be so."  San Juan v. Leach, 717 N.Y.S.2d 334, 336 (App. Div. 2nd Dep't 2000) (citations omitted).  If a reasonable person would consider the conduct to consist merely of "petty slights and trivial inconveniences," an employer can avoid liability under the NYCHRL.  Williams v. New York City Hous. Auth., 872 N.Y.S.2d 27, 41 (App. Div. 1st Dep't 2009).  Whether a workplace is hostile or abusive can only be determined by "considering the totality of the circumstances."  Father Belle Cmty. Ctr., 642 N.Y.S.2d at 744 (citations omitted).  Because the NYCHRL is designed to be broadly remedial, liability for sexual harassment under the NYCHRL is determined by the existence of any unequal treatment, and questions of severity and frequency are reserved for the consideration of damages.  Williams, 872 N.Y.S.2d at 38 (citing Farrugia v. North Shore Univ. Hosp., 820 N.Y.S.2d 718, 718 (Sup. Ct. N.Y. Cty. 2009)).

---

       [4]      Hostile work environment sexual harassment occurs when an employer's conduct "has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment."  Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 64, 65 (1986); see also Harris v. Forklift Sys. Inc., 510 U.S. 17, 21 (1993) (holding that a hostile work environment exists when "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment") (internal quotation marks and citations omitted).

Plaintiff's uncontradicted factual allegations are sufficient to establish that

Pimental discriminated against her and subjected her to a hostile work environment on the basis

of her gender.  As a woman, Plaintiff belonged to a protected group.  Plaintiff reasonably

believed that Pimental's constant criticism of Plaintiff's clothes and romantic advances

constituted sexual harassment.  Pimental singled out Plaintiff on the basis of her gender by

directing her to dress "sexier" and wear tighter clothing on a near-daily basis, even though other

servers dressed in a similar way and there was no dress policy.  (Compl. ¶¶ 32-35.)  Pimental

repeatedly made unwelcome remarks to Plaintiff about Plaintiff being his girlfriend, even after

Plaintiff told him she was not interested.  (Id. ¶¶ 36, 39-40.)  Taken together, Pimental's conduct

amounted to more than just petty slights and trivial inconveniences, and created a hostile work

environment for Plaintiff.  Pimental knew or should have known that his behavior was unlawful

and, when Plaintiff informed Pimental's wife, the Restaurant's other co-owner, of Pimental's

behavior, neither the Restaurant nor the other owner took remedial action.  Thus, because

Plaintiff has established a prima facie case of a hostile work environment and Pimental has failed

to proffer a legitimate, independent, and nondiscriminatory reason for his actions, Plaintiff has

proven her discrimination claim.

Plaintiff also claims that Defendants retaliated against her for opposing

discriminatory practices, and that she was constructively discharged from the Restaurant.  It is an

unlawful discriminatory practice for an employer to "discharge, expel or otherwise discriminate

against any person because he or she has opposed any practices forbidden under this article,"

which includes the practice of discriminating against an employee on the basis of gender.

McKinney's Executive Law § 296(1); Admin. Code § 8-107(7).  To establish a prima facie case

of retaliation, an employee must show that "(1) she has engaged in activity protected by [the

NYCHRL], (2) [she] was aware that she participated in the protected activity, (3) she suffered from a disadvantageous employment action based upon her activity, and (4) there is a causal connection between the protected activity and the adverse action." Pace, 692 N.Y.S.2d at 223-24 (citation omitted). Once an employee has established a prima facie case of retaliation, the burden then shifts to the employer "to present legitimate, independent, and nondiscriminatory reasons" to support its actions. Pace, 692 N.Y.S.2d at 224. If the employer meets this burden, the employee must show that the proffered reasons were merely a pretext for the employer's retaliatory actions. See id.

An employee's informal complaint to a supervisor about discrimination is sufficient to constitute a protected activity under the NYCHRL. See Nieblas-Love v. New York City Hous. Auth., No. 14CV5444-JMF, 2016 WL 796845, at *6 (S.D.N.Y. Feb. 26, 2016) (citations omitted). A constructive discharge occurs when an employer intentionally creates working conditions so intolerable, difficult, or unpleasant that a reasonable person would feel compelled to resign. See Chertkova v. Conn. Gen. Life Ins. Co., 92 F.3d 81, 89 (2d Cir. 1996). When an employee alleging sex-based discrimination under the NYCHRL was not actually terminated, the employee can show that she was subject to adverse action by demonstrating that her employer constructively discharged her. See Dooner v. Keefe, Bruyette & Woods, Inc., 157 F. Supp. 2d 265, 283 (S.D.N.Y. 2001).

Plaintiff's uncontradicted factual allegations are sufficient to establish that Pimental retaliated against her for opposing his sexual harassment of her. Plaintiff engaged in protected activity when she complained to the Restaurant's co-owner, Pimental's wife, about Pimental's behavior. (Compl. ¶ 41.) Almost immediately after Plaintiff's complaint, Pimental's treatment of her changed dramatically; his assignment to Plaintiff of a disproportionate number

of less desirable tasks, such as cleaning the back area and bathrooms (id. ¶ 44), constitutes an adverse employment action.  See Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 55 (2006) ("[A] reassignment of duties can [still] constitute retaliatory discrimination where both the former and present duties fall within the same job description. Almost every job category involves some duties that are less desirable than others.").  Furthermore, Pimental deliberately created difficult working conditions for Plaintiff by glaring at her, screaming at her in front of others, and reprimanding her for things he had not reprimanded her for before.  (Compl. ¶¶ 42-43.)  Because a reasonable employee would feel compelled to resign in light of these conditions, the Court finds that Plaintiff was constructively discharged.

The Court also finds that there is a causal connection between Plaintiff's complaint and the adverse action she suffered.  The fact that Pimental's significant change in behavior toward Plaintiff occurred almost immediately after her complaint to his wife supports the existence of a causal link between her engaging in a protected activity and the alleged adverse employment actions that she suffered.  The temporal proximity – a mere two weeks – between Plaintiff's complaint and her constructive discharge also permits an inference of a causal connection.  See Zann Kwan v. Andalex Grp. LLC, 737 F.3d 834, 845 (2d Cir. 2013) (holding that a three-week period between an employee's discrimination complaint and her termination is sufficiently short to establish a causal nexus for the purpose of a retaliation claim). Thus, Plaintiff has successfully established a prima facie case of retaliation.  Defendants have not met their burden of proffering a legitimate reason to support Pimental's behavior, and are thus liable on Plaintiff's NYCHRL retaliation claim.[5]

---

[5]      The Restaurant is also liable for Pimental's discriminatory and retaliatory conduct.  An employer is liable for an unlawful discriminatory practice based upon the conduct of an employee "who exercised managerial or supervisory

<u>CONCLUSION</u>

For the foregoing reasons, Plaintiff's motion for default judgment is granted. With respect to her FLSA and NYLL claims, Plaintiff is hereby awarded $3,193.75 in unpaid minimum hourly and overtime wages, 9% prejudgment interest per annum thereon from April 22, 2015, to the date of entry of judgment, $3,193.75 in liquidated damages, $1,550 in WTPA damages and reasonable attorney's fees and costs.  This case is referred to Magistrate Judge Freeman for an inquest on Plaintiff's claims for back pay and emotional distress damages in respect of her claims under the NYCHRL.

This Memorandum Opinion and Order resolves Docket Entry No. 17.

SO ORDERED.

Dated: New York, New York
       July 28, 2016


         /s/ Laura Taylor Swain
       LAURA TAYLOR SWAIN
       United States District Judge

---

responsibility."  Admin. Code § 8-107(13)(b)(1).  Pimental was employed by the Restaurant and exercised managerial and supervisory duties as the Restaurant's co-owner and manager as well as Plaintiff's supervisor.  Thus, both Defendants are liable for the claims of discrimination and retaliation under the NYCHRL.